# EXHIBIT 1

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release, dated October __04__, 2024, is made and entered into by and among Plaintiffs, individually and on behalf of the Settlement Class (as defined below), and Defendant, The Philadelphia Inquirer, LLC ("Philadelphia Inquirer") (collectively Plaintiffs and the Philadelphia Inquirer are the "Parties"), in the consolidated action entitled *In re Philadelphia Inquirer Data Security Litigation* pending in the U.S. District Court for the Eastern District of Pennsylvania. (the "Action") in order to fully and finally resolve and settle all of Plaintiffs' and the Participating Settlement Class's Released Claims, upon and subject to the terms and conditions hereof, and subject to the Court's approval.

## RECITALS

**WHEREAS**, between May 11, 2023 and May 13, 2023, the Philadelphia Inquirer experienced a Data Incident;

**WHEREAS**, the information contained in the files varied by individual but may have included Private Information;

**WHEREAS**, the Philadelphia Inquirer's investigation of the Data Incident concluded that the Private Information of approximately 25,549 people, including Plaintiffs, was compromised by the Data Incident;

**WHEREAS,** the Philadelphia Inquirer began notifying individuals whose Private Information was compromised by the Data Incident on or around April 29, 2024;

**WHEREAS,** beginning on May 6, 2024, three putative class actions were filed, two in the Philadelphia Court of Common Pleas and one in the United States District Court for the Eastern District of Pennsylvania;

**WHEREAS,** the cases filed in state court were removed to the United States District Court for the Eastern District of Pennsylvania and, on July 23, 2024, the Court issued an order consolidating these cases in the Action;

**WHEREAS,** on July 31, 2024, Plaintiffs Christopher Devine, Steven Hassell, and Ivery Sheree Mosley filed the operative consolidated amended complaint;

**WHEREAS**, the Parties agreed to participate in a mediation with mediator Bennett G. Picker, Esq. on July 8, 2024;

**WHEREAS**, in preparation for the mediation, the Parties exchanged certain information and documents, prepared mediation statements laying out their respective positions, including with respect to the merits, class certification and settlement, and participated in a mediation administered by mediator, Benjamin Picker, Esq.;

**WHEREAS**, in the weeks prior to the mediation, the Parties maintained an open dialogue concerning the contours of a potential agreement to begin settlement negotiations;

**WHEREAS**, the July 8, 2024 mediation with Mr. Picker was successful and helped the Parties reach a proposed resolution of the case;

**WHEREAS**, pursuant to the terms set forth below, this Agreement resolves all actual and potential claims, actions, and proceedings related to the Data Incident as set forth in the release contained herein, by and on behalf of Plaintiffs and the members of the Settlement Class defined herein, but excludes the claims of all Class Members who opt out of the Settlement Class pursuant to the terms and conditions herein;

**WHEREAS**, Class Counsel thoroughly examined the law and facts relating to the matters at issue in the Action, including Plaintiffs' claims, and the Philadelphia Inquirer's potential defenses (both on the merits and as to class certification). Based on a thorough analysis of the facts and the law, and taking into account the burden, expense, and delay of continued litigation, including the risks and uncertainties associated with litigating class certification and other defenses the Philadelphia Inquirer may assert, a protracted trial and appeal(s), as well as the opportunity for a fair, cost-effective, and assured method of resolving the claims of the Settlement Class, Plaintiffs and Class Counsel believe that resolution is an appropriate and reasonable means of ensuring that the Class is afforded important benefits expediently. Plaintiffs and Class Counsel have also taken into account the uncertain outcome and the risk of continued litigation, as well as the difficulties and delays inherent in such litigation;

**WHEREAS**, Plaintiffs and Class Counsel believe that the terms set forth in this Settlement Agreement confer substantial benefits upon the Settlement Class and have determined that they are fair, reasonable, adequate, and in the best interests of the Settlement Class;

**WHEREAS**, the Philadelphia Inquirer has similarly concluded that this Agreement is desirable in order to avoid the time, risk, and expense of defending protracted litigation, and to resolve finally and completely the claims of Plaintiffs and the Settlement Class;

**WHEREAS**, this Agreement, whether or not consummated, and any actions or proceedings taken pursuant to this Agreement, are for settlement purposes only, and the Philadelphia Inquirer specifically denies any and all wrongdoing;

**WHEREAS,** the existence of, the terms included, and any action(s) taken under or in connection with this Agreement, shall not constitute, be construed as, or be admissible in evidence as, any admission by the Philadelphia Inquirer of (i) the validity of any claim, defense, or fact asserted in the Action or any other pending or future action, or (ii) any wrongdoing, fault, violation of law, or liability of any kind;

**WHEREAS**, the foregoing Recitals are true and correct and are hereby fully incorporated in, and made a part of, this Agreement.

**NOW, THEREFORE**, in consideration of the promises, covenants, and agreements herein described and for other good and valuable consideration acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, the Parties do hereby mutually agree, as follows:

1.    **DEFINITIONS**

As used in this Agreement, the following terms shall be defined as follows:

1.1    "Action" means the consolidated cases captioned *In re Philadelphia Inquirer Data Security Litigation*, Case No. 24-2106-KSM, pending in the United States District Court for the Eastern District of Pennsylvania before the Honorable Karen S. Marston, U.S.D.J.

1.2    "Administrative Expenses" means all charges and expenses incurred by the Settlement Administrator in the administration of this Settlement, including, without limitation, all expenses and costs associated with claims administration, the Notice Plan, providing Notice to the Settlement Class, providing CAFA Notice, and all reasonable third-party fees and expenses incurred by the Settlement Administrator in administering the terms of this Agreement.

1.3    "Agreement" or "Settlement Agreement" means this Class Action Settlement Agreement and Release. The terms of the Settlement Agreement are set forth herein including the exhibits hereto.

1.4    "Approved Claim(s)" means a valid claim evidenced by a Claim Form submitted by a Class Member that (a) is timely and submitted in accordance with the directions on the Claim Form and the terms of this Agreement; (b) is physically signed or electronically verified by the Class Member; (c) satisfies the conditions of eligibility for a Settlement Benefit as set forth herein; and (d) has been approved by the Settlement Administrator.

1.5    "Business Days" means Monday, Tuesday, Wednesday, Thursday, and Friday, excluding holidays observed by the federal government.

1.6    "CAFA Notice" means the notice disseminated or to be disseminated to appropriate federal and state officials pursuant to the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), and in accordance with this Agreement. CAFA Notice will be mailed within 10 days of the filing of the Class Action Settlement Agreement and Release with the Court.

1.7    "Claimant" means a Class Member who submits a Claim Form for a Settlement Payment.

1.8    "Claim Form" means the form attached hereto as **Exhibit A**, as approved by the Court. The Claim Form may be submitted physically (via U.S. Mail) or electronically (via the Settlement Website) by Class Members who wish to file a claim for their given share of the Settlement Benefits pursuant to the terms and conditions of this Agreement. The Claim Form shall be available for download

from the Settlement Website. The Settlement Administrator shall mail a Claim Form, in hardcopy form, to any Class Member who so requests.

1.9    "Claims Deadline" means the date by which all Claim Forms must be received to be considered timely and shall be set as the date ninety (90) days after the Notice Date. The Claims Deadline shall be clearly set forth in the Long Form Notice, the Summary Notice, the Claim Form, and the Court's order granting preliminary approval.

1.10    "Class Counsel" means Benjamin F. Johns of Shub & Johns LLC; Kenneth J. Grunfeld of Kopelowitz Ostrow Ferguson Weiselberg Gilbert; Terence R. Coates of Markovits, Stock & DeMarco, LLC; and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC as Settlement Class Counsel (collectively "Class Counsel" or "Settlement Class Counsel").

1.11    "Class Member" means a member of the Settlement Class.

1.12    "Class Representatives" and "Plaintiffs" means Christopher Devine, Steven Hassell and Ivery Sheree Mosley.

1.13    "Court" means the United States District Court for the Eastern District of Pennsylvania.

1.14    "Data Incident" refers to the unauthorized access to files that occurred on the Philadelphia Inquirer's computer network between May 11, 2023 and May 13, 2023, and is the subject of the Action.

1.15    "Documented Loss" refers to monetary losses incurred by a Class Member and supported by Reasonable Documentation for attempting to remedy or remedying issues that are more likely than not a result of Data Incident, as further described in paragraph 3.3(b). Documented Loss must be supported by Reasonable Documentation that a Class Member actually incurred unreimbursed losses and consequential expenses that are more likely than not a result of the Data Incident and incurred between May 11, 2023 and the Notice Date.

1.16    "Effective Date" means the date upon which the Settlement contemplated by this Agreement shall become effective as set forth in paragraph 10.1 of this Agreement.

1.17    "Entity" means any person, corporation, partnership, limited liability company, association, trust, agency, or other organization of any type.

1.18    "Fee Award and Costs" means the amount of attorneys' fees and reimbursement of reasonable litigation costs and expenses awarded by the Court to Class Counsel, to be paid from the Settlement Fund.

1.19    "Final Approval Order" means the order to be entered by the Court after the Final Approval Hearing, which approves the Settlement.

4

1.20    "Final Approval Hearing" means the hearing to be conducted by the Court to determine the fairness, adequacy, and reasonableness of the Settlement pursuant to the Federal Rules of Civil Procedure and whether to issue the Final Approval Order and Judgment, or as otherwise scheduled on the Court docket and/or Settlement Website.

1.21    "Judgment" means a judgment rendered by the Court.

1.22    "Long Form Notice" means the long form notice of settlement made available on the Settlement Website and substantially in the form attached hereto as **Exhibit C**.

1.23    "Net Settlement Fund" means the amount of funds that remain in the Settlement Fund after funds are paid from or allocated for payment from the Settlement Fund for the following: (i) reasonable Administrative Expenses incurred pursuant to this Agreement, (ii) Service Awards approved by the Court, (iii) any amounts approved by the Court for the Fee Award and Costs, and (iv) applicable Taxes and Tax Expenses, if any.

1.24    "Notice" means notice of the proposed class action settlement to be provided to Class Members pursuant to the Notice Plan approved by the Court in connection with preliminary approval of the Settlement. The Notice shall consist of the Summary Notice, the Long Form Notice, and the Settlement Website and toll-free telephone line.

1.25    "Notice Date" means the date upon which Notice is initially disseminated to the Settlement Class by the Settlement Administrator, which shall be thirty-five (35) days after entry of the Preliminary Approval Order.

1.26    "Notice Plan" means the settlement notice program, as approved by the Court, developed by the Settlement Administrator and described in this Agreement for providing CAFA Notice and disseminating Notice to the Class Members of the terms of this Agreement and the Final Approval Hearing.

1.27    "Objection Deadline" means the date by which Class Members must file and postmark required copies of any written objections, pursuant to the terms and conditions herein, to this Agreement and to any application and motion for (i) the Fee Award and Costs, and (ii) the Service Awards, which shall be sixty (60) days following the Notice Date. The deadline for filing an objection will be clearly set forth in the Settlement Class Notice.

1.28    "Opt-Out Period" means the period in which a Class Member may submit a request to exclude him or herself from the Settlement ("Request for Exclusion"), pursuant to the terms and conditions herein, which shall expire sixty (60) days following the Notice Date. The deadline for filing a Request for Exclusion will be clearly set forth in the Settlement Class Notice.

1.29    "Philadelphia Inquirer" or "Defendant" means Defendant The Philadelphia Inquirer, LLC and its current and former affiliates, parents, subsidiaries, and successors.

1.30    "Philadelphia Inquirer's Counsel" or "Defendant's Counsel" refers to counsel for the Philadelphia Inquirer means attorney Angelo A. Stio, III at the law firm Troutman Pepper Hamilton Sanders LLP.

1.31    "Private Information" means information potentially impacted in the Data Incident, including Social Security numbers, driver's license numbers, financial account information, and medical information.

1.32    "Preliminary Approval Order" means an order by the Court that preliminarily approves the Settlement (including, but not limited to, the forms and procedure for providing Notice to the Settlement Class), permits Notice to the proposed Settlement Class, establishes a procedure for Class Members to object to or opt out of the Settlement, and sets a date for the Final Approval Hearing, without material change to the Parties' agreed-upon proposed Preliminary Approval Order attached hereto as **Exhibit D**.

1.33    "Reasonable Documentation" means documentation supporting a claim for Documented Loss including, but not limited to, credit card statements, bank statements, invoices, telephone records, and receipts.

1.34    "Released Claims" means any claim, liability, right, demand, suit, obligation, damage, including consequential damage, loss or cost, punitive damage, attorneys' fees, costs, and expenses, action or cause of action, of every kind or description—whether known or Unknown (as the term "Unknown Claims" is defined herein), suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, legal, statutory, or equitable—that was or could have been asserted on behalf of the Settlement Class in the Action related to or arising from the Data Incident, regardless of whether the claims or causes of action are based on federal, state, or local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether they are foreseen or unforeseen, suspected or unsuspected, or fixed or contingent, arising out of, or related or connected in any way with the Data Incident, including claims or causes of action of every kind and description that were brought, alleged, argued, raised or asserted in any pleading or court filing in the Action.

1.35    "Released Parties" means the Philadelphia Inquirer and its current and former affiliates, parents, subsidiaries, and successors, and any and all of their past, present, and future officers, directors, members, managing members, employees, equity holders, stockholders, partners, servants, agents, successors, attorneys, representatives, insurers, reinsurers, subrogees and assigns of any of the foregoing. Each of the Released Parties may be referred to individually as a "Released Party."

1.36    "Service Awards" means the amount awarded by the Court and paid to the Class Representatives in recognition of their role in this litigation, as set forth in paragraph 8 of this Agreement.

1.37    "Settlement" means this settlement of the Action by and between the Parties, and the terms thereof as stated in this Agreement.

1.38    "Settlement Administrator" means Verita, the third-party class action settlement administrator selected by the Parties via a competitive bidding process, and subject to the approval of the Court. Under the supervision of Class Counsel, the Settlement Administrator shall oversee and implement the Notice Plan and receive any Requests for Exclusion from the Class. Class Counsel and the Philadelphia Inquirer may, by agreement, substitute a different Settlement Administrator, subject to Court approval.

1.39    "Settlement Benefit(s)" means any Settlement Payment, the Credit Monitoring and Insurance Services (as defined in paragraph 3.3(a)), the Documented Loss Payments (as defined in paragraph 3.3(b)), the Cash Fund Payments (as defined in in paragraph 3.3(c)), the prospective relief set forth in Sections 2 and 3 herein, and any other benefits Class Members, Class Counsel, or their agents, receive pursuant to this Agreement, including non-monetary benefits and relief, the Fee Award and Costs, Service Awards, and Administrative Expenses.

1.40    "Settlement Class" and "Class" means approximately 25,549 natural persons whose Private Information was compromised in the Data Incident. Excluded from the Settlement Class are: (1) the Judge(s) presiding over the Action and members of their immediate families and their staff; (2) Philadelphia Inquirer and its affiliates, including their subsidiaries, parent companies, successors, predecessors, and any entity in which Philadelphia Inquirer or its affiliates and their parents, have a controlling interest, and their current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person.

1.41    "Settlement Fund" means the sum of $525,000.00 to be paid by or on behalf of the Philadelphia Inquirer, as specified in Section 3.1 of this Agreement.

1.42    "Settlement Payment" means any payment to be made to any Class Member for Approved Claims pursuant to Section 3.3 herein.

1.43    "Settlement Website" means the Internet website to be created, launched, and maintained by the Settlement Administrator, and which allows for the electronic submission of Claim Forms and Requests for Exclusion, and provides access to relevant case documents including the Settlement Class Notice, information about the submission of Claim Forms, and other relevant documents, including downloadable Claim Forms.

1.44    "Summary Notice" means the summary notice of the proposed Settlement herein, substantially in the form attached hereto as **Exhibit B**.

1.45    "Taxes" means all federal, state, or local taxes of any kind on any income earned by the Settlement Fund and the expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, interest, penalties and the reasonable expenses of tax attorneys and accountants). All (i) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Parties or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (ii) expenses and costs incurred in connection with the operation and implementation of this Agreement (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Agreement) ("Tax Expenses"), shall be paid out of the Settlement Fund. Further, Taxes and Tax Expenses shall be treated as, and considered to be, an Administrative Expense and shall be timely paid by the Settlement Administrator, out of the Settlement Fund, without prior order from the Court and the Settlement Administrator shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Class Members with Approved Claims any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation § 1.468B-2(l)(2)). The Parties hereto agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Agreement. For the purpose of Section 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the Settlement Administrator shall be the "administrator." The Settlement Administrator shall timely and properly file or cause to be filed all informational and other tax returns necessary or advisable with respect to the Settlement Fund and the escrow account (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)). Such returns (as well as the election described in this Agreement) shall be consistent with this Section and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in this Agreement.

1.46    "Unique Identifier" is the specific code that each Settlement Class Member will receive on the notice mailed to them, which will be required to be provided to the Claims Administrator to submit a claim.

1.47    "Unknown Claims" means any and all Released Claims that the Philadelphia Inquirer or any Class Representative or Class Member does not know or suspect to exist in his, her, or its favor as of the Effective Date and which, if known by him,

her, or it, might have materially affected his, her, or its decision(s) with respect to the Settlement.

## 2.    SECURITY COMMITMENTS; PROSPECTIVE RELIEF

2.1    Plaintiffs have received assurances that Philadelphia Inquirer has adopted, continued, and/or implemented, or will adopt, continue, or implement, for a period of at least two (2) years after the Effective Date and consistent with applicable law, reasonable data and information security measures, at its expense, which are designed to strengthen Philadelphia Inquirer's data and information security. Philadelphia Inquirer has provided reasonable access to confidential and confirmatory discovery regarding, among other things, the changes and improvements that have been made or are being made to protect Class Members' Private Information. Philadelphia Inquirer will provide Class Counsel with a declaration attesting to the undertaken or planned data security enhancements at Plaintiffs' request.

## 3.    SETTLEMENT FUND / MONETARY PAYMENT / BENEFITS DETAILS

3.1    Philadelphia Inquirer agrees to make or cause to be made the Settlement Payment to create the Settlement Fund. The payment to create the Settlement Fund shall occur as follows: within thirty (30) days of entry of the Preliminary Approval Order and upon receipt from the Settlement Administrator of detailed ACH instructions and a completed W-9 form, the Philadelphia Inquirer or its insurer will pay $525,000 to the Settlement Fund.

    (a)    Under no circumstances will the Philadelphia Inquirer or its insurer have any further monetary obligation, other than payment of the Settlement Fund. To the extent this Agreement is not finally approved, Philadelphia Inquirer will be entitled to the return of all amounts deposited, and any interest accrued thereon, less any payments made to the Settlement Administrator in connection with settlement administration services rendered.

3.2    The Settlement Payment is to be deposited in an interest-bearing bank escrow account established and administered by the Settlement Administrator (the "Escrow Account"). The Escrow Account shall be held in a Qualified Settlement Fund (defined below) in interest-bearing bank accounts with commercial banks with excess capital exceeding One Billion United States Dollars and Zero Cents ($1,000,000,000.00), with a rating of "A" or higher by S&P and in accounts that are fully insured by the United States Government or the FDIC. The Settlement Fund will be used to pay Approved Claims, Administrative Expenses (to be agreed upon by both parties), the Fee Award and Costs, Service Awards, Taxes and Tax Expenses.

    (a)    All interest on the funds in the Escrow Account shall accrue to the benefit of the Settlement Class, except if the Settlement is not finally approved. In such case, the interest shall accrue to the benefit of the Philadelphia Inquirer

and/or its insurer. Any interest shall not be subject to withholding and shall, if required, be reported appropriately to the Internal Revenue Service by the Settlement Administrator. The Settlement Administrator is responsible for the payment of all Taxes.

(b)     The funds in the Escrow Account shall be deemed a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1 at all times after the creation of the Escrow Account. All Taxes shall be paid out of the Escrow Account. Defendant, Defendant's Counsel, Plaintiffs, and Class Counsel shall have no liability or responsibility for any of the Taxes. The Escrow Account shall indemnify and hold Defendant, Defendant's Counsel, Plaintiffs, and Class Counsel harmless for all Taxes (including, without limitation, Taxes payable by reason of any such indemnification). For the purpose of the Internal Revenue Code and the Treasury regulations thereunder, the Settlement Administrator shall be designated as the "administrator" of the Settlement Fund. The Settlement Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)). Such returns (as well as the election described in the previous paragraph) shall be consistent with this paragraph and in all events shall reflect that all taxes (including the Taxes, any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein. The Settlement Administrator shall maintain control over the Settlement Fund and shall be responsible for all disbursements. The Settlement Administrator shall not disburse any portion of the Settlement Fund except as provided in this Agreement and with the written agreement of Class Counsel and Defendant's Counsel or by order of the Court. All funds held by the Settlement Administrator shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement or further order of the Court.

3.3     <u>Settlement Payments</u>: Each Class Member may qualify and submit a claim for Credit Monitoring and Insurance Services. In addition, Class Members may file a claim for either a Documented Loss Payment or a Cash Fund Payment (not both). A summary of these benefits is as follows:

(a)     <u>Credit Monitoring and Insurance Services ("CMIS")</u>. All Class Members may elect to claim one year of three-bureau credit monitoring services to be provided by a vendor agreed upon by the Parties. The CMIS benefit will also provide $1 million in identity theft insurance. Said CMIS benefits will be available to Class Members irrespective of whether they took advantage of any previous offering of credit monitoring from the Philadelphia Inquirer. Class Members will not be required to submit any supporting

documentation, aside from their completed Claim Form and Unique Identifier on it, to receive this component of the Settlement.

(b)     <u>Documented Loss Payment</u>. In addition to CMIS, and as an alternative to the Cash Fund Payment (defined in subsection (c) below), Class Members may submit a claim for a Settlement Payment of up to $5,000.00 per Class Member for reimbursement in the form of a documented loss payment ("Documented Loss Payment"). To submit a valid Claim for a Documented Loss Payment, a Class Member must submit the following: (i) a valid Claim Form to the Settlement Administrator electing to receive the Documented Loss payment benefit; (ii) an attestation regarding any actual and unreimbursed Documented Loss made under penalty of perjury; and (iii) Reasonable Documentation that demonstrates to the satisfaction of the Settlement Administrator the Documented Loss to be reimbursed pursuant to the terms of the Settlement. If a Class Member does not submit Reasonable Documentation supporting a Documented Loss Payment claim, or if a Class Member's claim for a Documented Loss Payment is rejected by the Settlement Administrator for any reason, and the Class Member fails to cure his or her claim, the claim will be rejected and the Class Member's claim will instead be automatically placed into the Cash Fund Payment category below.

(c)     <u>Cash Fund Payment</u>. In addition to CMIS, and as an alternative to the Documented Loss Payment (defined in subsection (b) above), Class Members may submit a claim to receive a *pro rata* Settlement Payment in cash ("Cash Fund Payment"). The amount of the Cash Fund Payment will be calculated in accordance with Section 3.8 below. Class Members will not be required to submit any supporting documentation, aside from their completed Claim Form or Claim Form for *pro rata* Cash Fund Payment Only and Unique Identifier on it, to receive this component of the Settlement.

3.4     <u>Settlement Payment Methods.</u> Class Members will be provided the option to receive any Settlement Payment due to them pursuant to the terms of this Agreement via various digital methods. In the event that Class Members do not exercise this option with the Settlement Administrator, they will receive their Settlement Payment via a physical check sent to them by U.S. Mail.

3.5     <u>Deadline to File Claims.</u> Claim Forms must be postmarked or received electronically within ninety (90) days after the Notice Date.

3.6     <u>The Settlement Administrator.</u> The Settlement Administrator shall have the authority to determine whether a Claim Form is valid, timely, and complete. To the extent the Settlement Administrator determines a claim is deficient for a reason other than late posting, within a reasonable amount of time, the Settlement Administrator shall notify the Claimant (with a copy to Class Counsel) of the deficiencies and notify the Claimant that he or she shall have thirty (30) days to

11

cure the deficiencies and re-submit the claim. No notification is required for late-posted claims. The Settlement Administrator shall exercise reasonable discretion to determine whether the Claimant has cured the deficient claim. If the Claimant fails to cure the deficiency, the claim shall stand as denied, and the Class Member shall be so notified if practicable.

3.7     Timing of Settlement Benefits. Within ninety (90) days after: (i) the Effective Date; or (ii) all Claim Forms have been processed subject to the terms and conditions of this Agreement, whichever date is later, the Settlement Administrator shall cause funds to be distributed to each Class Member who is entitled to funds based on the selection made on their given Claim Form.

3.8     Distribution of Settlement Payments: The Settlement is designed to exhaust the Settlement Fund. The Settlement Fund shall be used to make payments for the following: (i) reasonable Administrative Expenses incurred pursuant to the Settlement, (ii) Service Awards approved by the Court, (iii) any amounts approved by the Court for the Fee Award and Costs, and (iv) applicable Taxes and Tax Expenses, if any. The remaining amount is the Net Settlement Fund. The Settlement Administrator will first apply the Net Settlement Fund to pay for CMIS claimed by Class Members. Funds remaining after paying for CMIS will be used by the Settlement Administrator to pay valid claims for approved Documented Loss Payments. The amount of the Net Settlement Fund remaining after all Documented Loss Payments are applied and the payments for the CMIS are made shall be referred to as the "Post CMIS/DL Net Settlement Fund." The Settlement Administrator shall then utilize the Post CMIS/DL Net Settlement Fund to make all Cash Fund Payments pursuant to Section 3.3(c) herein. The amount of each Cash Fund Payment shall be calculated by dividing the Post CMIS/DL Net Settlement Fund by the number of valid claims submitted for Cash Fund Payments.

In the event the Net Settlement Fund is insufficient to cover the payment for the CMIS claimed by Class Members, the duration of the CMIS coverage will be reduced to exhaust the fund. In such an event, no Net Settlement Funds will be distributed to Claimants for Approved Claims for Documented Loss Payments or for Cash Fund Payments.

In the event that the aggregate amount of all Documented Loss Payments and payments for the CMIS exceeds the total amount of the Net Settlement Fund, then the value of the Documented Loss Payment to be paid to each Class Member shall be reduced, on a *pro rata* basis, such that the aggregate value of all Documented Loss Payments and payments due for CMIS does not exceed the Net Settlement Fund. In such an event, no Net Settlement Funds will be distributed to Claimants with Approved Claims for Cash Fund Payments. All such determinations shall be performed by the Settlement Administrator.

3.9     Deadline to Deposit or Cash Physical Checks. Class Members with Approved Claims who receive a Documented Loss Payment or a Cash Fund Payment, by

physical check, shall have 120 days following distribution to deposit or cash their benefit check.

3.10    Residual Funds. The Settlement is designed to exhaust the Settlement Fund. To the extent any monies remain in the Net Settlement Fund more than 120 days after the distribution of all Settlement Payments to the class members, a subsequent Settlement Payment will be evenly made to all Class Members with approved claims for Cash Fund Payments who cashed or deposited the initial payment they received, provided that the average check amount is equal to or greater than Three Dollars and No Cents ($3.00). The distribution of this remaining Net Settlement Fund shall continue until the average check or digital payment in a distribution is less than three dollars ($3.00), whereupon 100% of the amount remaining in the Net Settlement Fund, if any, shall be given to the Pennsylvania Interest on Lawyers Trust Account Board (PA IOLTA), subject to Court approval.

3.11    Returned Payments. For any Settlement Payment returned to the Settlement Administrator as undeliverable (including, but not limited to, when the intended recipient is no longer located at the address), the Settlement Administrator shall make one additional effort to make any digital payments and engage in a reasonable efforts to find a valid address (in the case of physical checks) and resend the Settlement Payment within thirty (30) days after the physical check is returned to the Settlement Administrator as undeliverable. The Settlement Administrator shall make one attempt to repay or resend a Settlement Payment.

3.12    Residue of Settlement Fund. No portion of the Settlement Fund shall ever revert or be repaid to Philadelphia Inquirer after the Effective Date.

3.13    Custody of Settlement Fund. The Settlement Fund shall be deposited into the Escrow Account but shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to this Agreement or returned to those who paid the Settlement Fund in the event this Agreement is voided, terminated, or cancelled. In the event this Agreement is voided, terminated, or cancelled due to lack of approval from the Court or any other reason, any amounts remaining in the Settlement Fund after payment of all Administrative Expenses incurred in accordance with the terms and conditions of this Agreement, including all interest earned on the Settlement Fund net of any Taxes, shall be returned to Philadelphia Inquirer and/or its insurer, and no other person or entity shall have any further claim whatsoever to such amounts.

3.14    Non-Reversionary. This is a non-reversionary settlement. As of the Effective Date, all rights of Philadelphia Inquirer and/or its insurer in or to the Settlement Fund shall be extinguished, except in the event this Agreement is voided, cancelled, or terminated, as set forth herein. In the event the Effective Date occurs, no portion of the Settlement Fund shall be returned to Philadelphia Inquirer and/or its insurers.

3.15    Payment/Withdrawal Authorization. No amounts from the Settlement Fund may be withdrawn unless (i) expressly authorized by the Court's order granting Final

13

Approval to the Agreement or (ii) approved by the Court. The Parties, by agreement, may authorize the periodic payment of actual reasonable Administrative Expenses from the Settlement Fund as such expenses are invoiced without further order of the Court. The Settlement Administrator shall provide Class Counsel and the Philadelphia Inquirer's Counsel with notice of any withdrawal or other payment the Settlement Administrator proposes to make from the Settlement Fund before the Effective Date at least seven (7) Business Days prior to making such withdrawal or payment.

3.16    <u>Payments to Class Members</u>. The Settlement Administrator, subject to such supervision and direction of the Court and/or Class Counsel as may be necessary or as circumstances may require, shall administer and/or oversee distribution of the Settlement Fund to Class Members pursuant to this Agreement.

3.17    <u>Taxes</u>. All Taxes relating to the Settlement Fund shall be paid out of the Settlement Fund, and shall be timely paid by the Settlement Administrator without prior order of the Court. Further, the Settlement Fund shall indemnify and hold harmless the Parties, the Philadelphia Inquirer's insurer, and their Parties' counsel for Taxes (including, without limitation, taxes payable by reason of any such indemnification payments). The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Class Representative or any Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund. Notwithstanding anything stated herein, Taxes do not include any federal, state, and local tax owed by any Claimant, Class Representative, or Class Member as a result of any benefit or payment received as a result of the Settlement. Each Claimant, Class Representative, or Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her, or it of the receipt of funds from the Settlement Fund pursuant to this Agreement.

3.18    <u>Limitation of Liability</u>.

(a)    The Philadelphia Inquirer, the Philadelphia Inquirer's insurer and the Philadelphia Inquirer's Counsel shall not have any responsibility for or liability whatsoever with respect to (i) any act, omission or determination of Class Counsel, the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.  For the avoidance of doubt, the aggregate liability of The Philadelphia Inquirer, the Philadelphia Inquirer's insurer and the Philadelphia Inquirer's Counsel shall be limited to the Settlement Fund.

(b)    Class Representatives and Class Counsel shall not have any liability whatsoever with respect to (i) any act, omission, or determination of the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

(c)    The Settlement Administrator shall indemnify and hold Class Counsel, the Settlement Class, Class Representatives, the Philadelphia Inquirer, the Philadelphia Inquirer's insurer, and the Philadelphia Inquirer's Counsel, harmless for (i) any act or omission or determination of the Settlement Administrator, or any of Settlement Administrator's designees or agents, in connection with the Notice Plan and the administration of the Settlement; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

## 4.    RELEASE

4.1    Upon the Effective Date, and in consideration of the Settlement Benefits described herein, the Class Representatives and all Class Members identified in the Settlement Class List in accordance with Section 6.4, on behalf of themselves, their heirs, assigns, executors, administrators, predecessors, and successors, and any other person purporting to claim on their behalf, release and discharge all Released Claims, including Unknown Claims, against each of the Released Parties, and agree to refrain from instituting, directing or maintaining any lawsuit, contested matter, adversary proceeding, or miscellaneous proceeding against each of the Released Parties that relates to the Data Incident or otherwise arises out of the same facts and circumstances set forth in the operative Consolidated Class Action Complaint in this Action. This Settlement releases claims against only the Released Parties. This Settlement does not release, and it is not the intention of the Parties to this Settlement to release, any claims against any third party. Nor does this Release apply to any Class Member who timely excludes himself or herself from the Settlement, or to any Class Member (or the estate of any Class Member) who is deceased prior to the Notice Date.

4.2    The Parties understand that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, each Party

expressly assumes that risk of such possible difference in facts and agrees that this Agreement shall remain effective notwithstanding such difference in facts. The Parties agree that in entering this Agreement, it is understood and agreed that each Party relies wholly upon its own judgment, belief, and knowledge and that each Party does not rely on inducements, promises, or representations made by anyone other than those embodied herein.

## 5. REQUIRED EVENTS AND COOPERATION BY PARTIES

5.1     Preliminary Approval. Class Counsel shall submit this Agreement to the Court and shall promptly move the Court to enter the Preliminary Approval Order, in the form attached as **Exhibit D**.

5.2     CAFA Notice. Within ten (10) days after Plaintiffs file the motion for preliminary approval of the Settlement, the Settlement Administrator shall prepare, and Defendant shall provide, CAFA Notice to the appropriate officials of the United States and the applicable states and U.S. territories. The costs of such notice will be paid from the Settlement Fund as an Administrative Expense. The Philadelphia Inquirer and Class Counsel shall be provided with copies of the CAFA Notice provided in accordance with this section.

5.3     Cooperation. The Parties shall, in good faith, cooperate, assist, and undertake all reasonable actions and steps in order to accomplish all requirements of this Agreement on the schedule set by the Court, subject to the terms of this Agreement. If, for any reason, the Parties determine that the schedule set by the Court is no longer feasible, the Parties shall use their best judgment to amend the schedule to accomplish the goals of this Agreement.

5.4     Certification of the Settlement Class. For purposes of this Settlement only, Plaintiffs and the Philadelphia Inquirer stipulate to the certification of the Settlement Class, which is contingent upon the Court entering the Final Approval Order and Judgment of this Settlement and the occurrence of the Effective Date. Plaintiffs and the Philadelphia Inquirer further stipulate to designate the Class Representatives as the representatives for the Settlement Class. Should: (1) the Settlement not receive final approval from the Court, or (2) the Effective Date not occur, the certification of the Settlement Class shall be void. The Philadelphia Inquirer reserves the right to contest class certification and the adequacy of any Plaintiff in the Action to serve as a Class Representative for all other purposes.

5.5     Final Approval. The Parties shall request that the Court schedule the Final Approval Hearing for a date that is no earlier than one hundred twenty (120) days after the entry of the Preliminary Approval Order. The Final Approval Hearing will occur on a date established by the Court in the preliminary approval order unless otherwise indicated on the Court docket and/or Settlement Website.

## 6.    CLASS NOTICE, OPT OUTS, AND OBJECTIONS

6.1    Notice shall be disseminated pursuant to the Court's Preliminary Approval Order.

6.2    The Settlement Administrator shall oversee and implement the Notice Plan approved by the Court. All costs associated with the Notice Plan shall be paid from the Settlement Fund.

6.3    <u>Direct Notice</u>. No later than the Notice Date or such other time as may be ordered by the Court, the Settlement Administrator shall disseminate Notice to the Class Members via direct mail.

6.4    <u>Settlement Class List</u>. Within ten (10) days after the issuance of the Preliminary Approval Order, the Philadelphia Inquirer will provide to the Settlement Administrator a list of the names and contact information of the approximately 25,549 Class Members that it has in its possession, custody, or control after a diligent search. Everyone on the Settlement Class List will be provided with a Unique Identifier that they will be asked for when they submit claims.

6.5    <u>Confidentiality</u>. Any information relating to Class Members provided to the Settlement Administrator pursuant to this Agreement shall be provided solely for the purpose of providing Notice to the Class Members (as set forth herein) and allowing them to recover under this Agreement; shall, except for purposes of providing Notice be kept in strict confidence by the Settlement Administrator; shall not be disclosed to any third party; shall be destroyed after all distributions to Class Members have been made; and shall not be used for any other purpose. Moreover, because the Class Member list and information contained therein will be provided to the Settlement Administrator solely for purposes of providing the Class Notice and Settlement Benefits and processing opt-out requests, the Settlement Administrator will execute a confidentiality and non-disclosure agreement with the Philadelphia Inquirer's Counsel, and will ensure that any information provided to it by Class Members, Class Counsel, the Philadelphia Inquirer, or the Philadelphia Inquirer's Counsel, will be secure and used solely for the purpose of effecting this Settlement.

6.6    <u>Fraud Prevention</u>. The Settlement Administrator shall use reasonable and customary fraud-prevention mechanisms to prevent (i) submission of Claim Forms by persons other than potential Class Members, (ii) submission of more than one Claim Form per person, and (iii) submission of Claim Forms seeking amounts to which the claimant is not entitled. In the event a Claim Form is submitted without a unique Class Member identifier, the Settlement Administrator shall employ reasonable efforts to ensure that the claim is valid.

6.7    <u>Settlement Website</u>. Prior to any dissemination of the Summary Notice and prior to the Notice Date, the Settlement Administrator shall cause the Settlement Website to be launched on the Internet in accordance with this Agreement. The Settlement Administrator shall create the Settlement Website. The Settlement Website shall

contain information regarding how to submit Claim Forms (including submitting Claims Forms electronically through the Settlement Website) and relevant documents, including, but not limited to, the Long Form Notice, the Claim Form, this Agreement, the Preliminary Approval Order entered by the Court, and the Consolidated Complaint in the Action, and will (on its URL landing page) notify the Settlement Class of the date, time, and place of the Final Approval Hearing. The Settlement Website shall also provide the toll-free telephone number and mailing address through which Class Members may contact the Settlement Administrator directly. The Settlement Website shall also allow for submission of Requests of Exclusion electronically through the Settlement Website.

6.8    Opt Out/Request for Exclusion. The Notice shall explain that the procedure for Class Members to opt out and exclude themselves from the Settlement Class is by notifying the Settlement Administrator in writing, postmarked no later than sixty (60) days after the Notice Date. Any Class Member may submit a Request for Exclusion from the Settlement at any time during the Opt-Out Period. To be valid, the Request for Exclusion must be postmarked or received by the Settlement Administrator on or before the end of the Opt-Out Period. In the event a Class Member submits a Request for Exclusion to the Settlement Administrator via U.S. Mail, such Request for Exclusion must:

(a)    be in writing and must identify the case name "*In re Philadelphia Inquirer Data Security Litigation*;"

(b)    state the name, address, telephone number and unique identifier of the Class Member seeking exclusion;

(c)    identify any lawyer representing the Class Member seeking to opt out; be physically signed by the person(s) seeking exclusion; and

(d)    must also contain a statement to the effect that "I hereby request to be excluded from the proposed Settlement Class in '*In re Philadelphia Inquirer Data Security Litigation*.'"

Any person who elects to request exclusion from the Settlement Class shall not (i) be bound by any orders or Judgment entered in the Action, (ii) be entitled to relief under this Agreement, (iii) gain any rights by virtue of this Agreement, or (iv) be entitled to object to any aspect of this Agreement. Requests for Exclusion may only be done on an individual basis, and no person may request to be excluded from the Settlement Class through "mass" or "class" opt outs.

6.9    Objections. The Notice shall explain that the procedure for Class Members to object to the Settlement is by submitting written objections to the Court no later than sixty (60) days after the Notice Date. Any Class Member may enter an appearance in the Action, at their own expense, individually or through counsel of their own choice. Any Class Member who wishes to object to the Settlement, the Settlement Benefits, Service Awards, and/or the Fee Award and Costs, or to appear at the Final Approval

Hearing and show cause, if any, for why the Settlement should not be approved as fair, reasonable, and adequate to the Class, why a final Judgment should not be entered thereon, why the Settlement Benefits should not be approved, or why the Service Awards and/or the Fee Award and Costs should not be granted, may do so, but must proceed as set forth in this paragraph. No Class Member or other person will be heard on such matters unless they have filed in this Action the objection, together with any briefs, papers, statements, or other materials the Class Member or other person wishes the Court to consider, within sixty (60) days following the Notice Date. All written objections and supporting papers must clearly:

(a)     state the Class Member's full name, current mailing address, and telephone number;

(b)     include proof that the Class Member is a member of the Settlement Class (e.g., copy of the Settlement Notice, copy of the original notice of the Data Incident);

(c)     identify the specific factual and legal grounds for the objection;

(d)     identify all counsel representing the Class Member, if any;

(e)     include a list, including case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel has filed an objection to any proposed class action settlement in the past five (5) years; and

(f)     contain a statement regarding whether the Class Member (or counsel of his or her choosing) intends to appear at the Final Approval Hearing.

All objections must be submitted to the Settlement Administrator, Class Counsel identified below, and to the Court either by mailing them to: Clerk in the Action, United States District Court for the Eastern District of Pennsylvania, 601 Market Street, Philadelphia, PA 19106, filing them in person in the Action at the Courthouse, or filing them through the Court's Electronic Claims Filing system. All objections must be filed or postmarked on or before the Objection Deadline, as set forth above. Any Class Member who does not make their objections in the manner and by the date set forth in this paragraph shall be deemed to have waived any objections and shall be forever barred from raising such objections.

## 7.   SETTLEMENT ADMINISTRATION

7.1    <u>Submission of Claims</u>.

(a)     <u>Submission of Electronic and Hard Copy Claims</u>. Class Members may submit electronically verified Claim Forms to the Settlement Administrator through the Settlement Website or may download Claim Forms to be filled out, signed, and submitted physically by mail to the Settlement

Administrator. Class Members may also complete the tear-off portion of the mailed Summary Notice to make a claim for CMIS and Cash Fund Payments *only*. Class Members who wish to elect Documented Loss Payments must go to the Settlement Website to complete the Claim Form electronically or print and mail a copy of the completed Claim Form along with supporting documentation. Claim Forms must be submitted electronically or postmarked during the Claims Period (*i.e.*, between the Notice Date and the Claims Deadline), and on or before the Claims Deadline. The Settlement Administrator shall reject any Claim Forms that are incomplete, inaccurate, or not timely received and will provide Claimants notice and the ability to cure defective claims, unless otherwise noted in this Agreement.

(b)      Review of Claim Forms. The Settlement Administrator will review Claim Forms submitted by Class Members to determine whether they are eligible for a Settlement Payment in conjunction with counsel for the parties.

7.2      Settlement Administrator's Duties.

(a)      Cost Effective Claims Processing. The Settlement Administrator shall, under the supervision of the Court, administer the relief provided by this Agreement by processing Claim Forms in a rational, responsive, cost effective, and timely manner, and calculate Settlement Payments in accordance with this Agreement.

(b)      Dissemination of Notices. The Settlement Administrator shall disseminate the Notice Plan as provided for in this Agreement.

(c)      Maintenance of Records. The Settlement Administrator shall maintain reasonably detailed records of its activities under this Agreement. The Settlement Administrator shall maintain all such records as required by applicable law in accordance with its reasonable business practices and such records will be made available to Class Counsel and the Philadelphia Inquirer's Counsel upon request. The Settlement Administrator shall also provide reports and other information to the Court as the Court may require. Upon request, the Settlement Administrator shall provide Class Counsel and the Philadelphia Inquirer's Counsel with information concerning Notice, administration, and implementation of the Settlement. Without limiting the foregoing, the Settlement Administrator also shall:

(i)      Receive Requests for Exclusion from Class Members and provide Class Counsel and the Philadelphia Inquirer's Counsel a copy thereof no later than five (5) days following the deadline for submission of the same. If the Settlement Administrator receives any Requests for Exclusion or other requests from Class Members after expiration of the Opt-Out Period, the Settlement Administrator

20

shall promptly provide copies thereof to Class Counsel and the Philadelphia Inquirer's Counsel;

(ii) Provide weekly reports to Class Counsel and the Philadelphia Inquirer's Counsel that include, without limitation, reports regarding the number of Claim Forms received, the number of Claim Forms approved by the Settlement Administrator, the amount of Claims Forms received (including a breakdown of what types of claims were received and approved), and the categorization and description of Claim Forms rejected by the Settlement Administrator. The Settlement Administrator shall also, as requested by Class Counsel or the Philadelphia Inquirer's Counsel and from time to time, provide the amounts remaining in the Net Settlement Fund;

(iii) Make available for inspection by Class Counsel and the Philadelphia Inquirer's Counsel the Claim Forms and any supporting documentation received by the Settlement Administrator at any time upon reasonable notice;

(iv) Cooperate with any audit by Class Counsel or Philadelphia Inquirer's Counsel, who shall have the right, but not the obligation, to review, audit, and evaluate all Claim Forms for accuracy, veracity, completeness, and compliance with the terms and conditions of this Agreement.

7.3 <u>Requests For Additional Information</u>: In the exercise of its duties outlined in this Agreement, the Settlement Administrator shall have the right to reasonably request additional information from the Parties or any Class Member who submits a Claim Form.

## 8. SERVICE AWARDS

8.1 Class Representatives and Class Counsel may seek Service Awards to the Class Representatives of up to $2,000 (Two Thousand Dollars) per Class Representative. Class Counsel may file a motion seeking Service Awards for the Class Representatives on or before fourteen (14) days before the Objection Deadline.

8.2 The Settlement Administrator shall pay the Service Awards approved by the Court to the Class Representatives from the Settlement Fund. Such Service Awards shall be paid by the Settlement Administrator, in the amount approved by the Court, as soon as practicable after the Effective Date.

8.3 In the event the Court declines to approve, in whole or in part, the payment of the Service Award in the amounts requested, the remaining provisions of this Agreement shall remain in full force and effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the

amount of the Service Award shall constitute grounds for cancellation or termination of this Agreement.

8.4    The Parties did not discuss or agree upon the amount of the maximum amount of Service Awards for which Class Representatives can apply for, until after the substantive terms of the Settlement had been agreed upon.

## 9.    ATTORNEYS' FEES, COSTS, AND EXPENSES

9.1    Class Counsel may file a motion seeking an award of attorneys' fees of up to (33 1/3%) (thirty-three and one-third percent) of the Settlement Fund (i.e., $175,000.00), and, additionally, reasonably incurred litigation expenses and costs (i.e., Fee Award and Costs), no later than fourteen (14) days prior to the Objection Deadline. The motion for a Fee Award and Costs shall be posted on the Settlement Website. The Settlement Administrator shall pay any attorneys' fees, costs, and expenses awarded by the Court to Class Counsel in the amount approved by the Court, from the Settlement Fund, as soon as practicable after the Effective Date.

9.2    Unless otherwise ordered by the Court, Class Counsel shall have the sole and absolute discretion to allocate any approved Fee Award and Costs amongst themselves.

9.3    The Settlement is not conditioned upon the Court's approval of an award of Class Counsel's Fee Award and Costs or Service Awards.

## 10.    EFFECTIVE DATE, MODIFICATION, AND TERMINATION

10.1    The Effective Date of the Settlement shall be the first day after all of the following conditions have occurred:

(a)    The Philadelphia Inquirer and Class Counsel execute this Agreement;

(b)    The Court enters the Preliminary Approval Order attached hereto as **Exhibit D**, without material change;

(c)    Notice is provided to the Settlement Class consistent with the Preliminary Approval Order;

(d)    The Court enters the Final Approval Order and Judgment; and

(e)    The Final Approval Order and Judgment have become "Final" because: (i) the time for appeal, petition, rehearing or other review has expired; or (ii) if any appeal, petition, request for rehearing or other review has been filed, the Final Approval Order and Judgment is affirmed without material change or the appeal is dismissed or otherwise disposed of, no other appeal, petition, rehearing or other review is pending, and the time for further appeals, petitions, requests for rehearing or other review has expired.

10.2    In the event that the Court declines to enter the Preliminary Approval Order, declines to enter the Final Approval Order and Judgment, or the Final Approval Order and Judgment does not become Final (as described in Paragraph 10.1(e) of this Agreement), or the Settlement Administrator receives more than 100 Requests for Exclusions from the Settlement, Philadelphia Inquirer may, at its sole discretion, terminate this Agreement on five (5) Business Days written notice from the Philadelphia Inquirer's Counsel to Class Counsel.

10.3    In the event the terms or conditions of this Agreement are materially modified by any court, any Party, in its sole discretion, to be exercised within fourteen (14) days after such modification, may declare this Agreement null and void. In the event of a material modification by any court, and in the event the Parties do not exercise their unilateral options to withdraw from this Settlement Agreement pursuant to this Paragraph, the Parties shall meet and confer within seven (7) days of such ruling to attempt to reach an agreement as to how best to effectuate the court-ordered modification. For the avoidance of doubt, a "material modification" shall not include any reduction by the Court of the Fee Award and Costs and/or Service Awards.

10.4    Except as otherwise provided herein, in the event the Settlement is terminated, the Parties to this Agreement, including Class Members, shall be deemed to have reverted to their respective status in the Action immediately prior to the execution of this Agreement, and, except as otherwise expressly provided, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered. In addition, the Parties agree that in the event the Settlement is terminated, any orders entered pursuant to the Agreement shall be deemed null and void and vacated and shall not be used in or cited by any person or entity in support of claims or defenses.

10.5    In the event this Agreement is terminated pursuant to any provision herein, then the Settlement herein shall become null and void and shall have no legal effect, and the Parties will return to their respective positions existing immediately before the execution of this Agreement.

10.6    Notwithstanding any provision of this Agreement, in the event this Agreement is not approved by any court, or terminated for any reason, or the Settlement set forth in this Agreement is declared null and void, or in the event that the Effective Date does not occur, Class Members, Plaintiffs, and Class Counsel shall not in any way be responsible or liable for any of the Administrative Expenses, or any expenses, including costs of Notice and administration associated with this Settlement or this Agreement, except that each Party shall bear its own attorneys' fees and costs.

## 11.    NO ADMISSION OF WRONGDOING OR LIABILITY

11.1    This Agreement, whether or not consummated, any communications and negotiations relating to this Agreement or the Settlement, and any proceedings taken pursuant to the Agreement:

(a) shall not be offered or received against the Philadelphia Inquirer as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by the Philadelphia Inquirer with respect to the truth of any fact alleged by any Plaintiffs or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, breach of duty, or wrongdoing of the Philadelphia Inquirer;

(b) shall not be offered or received against the Philadelphia Inquirer as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by the Philadelphia Inquirer;

(c) shall not be offered or received against the Philadelphia Inquirer as evidence of a presumption, concession or admission with respect to any liability, negligence, fault, breach of duty, or wrongdoing, or in any way referred to for any other reason as against the Philadelphia Inquirer, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement; provided, however, that if this Agreement is approved by the Court, the Parties may refer to it to effectuate the liability protection granted them hereunder;

(d) shall not be construed against the Philadelphia Inquirer as an admission or concession that the consideration to be given hereunder represents the relief that could be or would have been awarded after trial; and

(e) shall not be construed as or received in evidence as an admission, concession or presumption against the Class Representatives or any Class Member that any of their claims are without merit, or that any defenses asserted by the Philadelphia Inquirer have any merit.

## 12.    REPRESENTATIONS

12.1    Each Party represents that: (i) such Party has full legal right, power, and authority to enter into and perform this Agreement, subject to Court approval; (ii) the execution and delivery of this Agreement by such Party and the consummation by such Party of the transactions contemplated by this Agreement have been duly authorized by such Party; (iii) this Agreement constitutes a valid, binding, and enforceable agreement; and (iv) no consent or approval of any person or entity is necessary for such Party to enter into this Agreement.

## 13.    NOTICE

13.1    All notices to Class Counsel provided for in this Agreement shall be sent by email (to all email addresses set forth below) and by First-Class mail to all of the following:

Gary Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
gklinger@milberg.com

Benjamin F. Johns
**SHUB & JOHNS LLC**
Four Tower Bridge
200 Barr Harbor Drive, Ste 400
Conshohocken, PA 19428
bjohns@shublawyers.com

Kenneth J. Grunfeld
**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**
65 Overhill Road
Bala Cynwyd, PA 19004
Phone: (954) 525-4100
grunfeld@kolawyers.com

Terence R. Coates
**MARKOVITS, STOCK & DE MARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Phone: (513) 651-3700
Fax: (513) 665-0219
tcoates@msdlegal.com

13.2    All notices to Philadelphia Inquirer or Philadelphia Inquirer's Counsel provided for in this Agreement shall be sent by email and First-Class mail to the following:

> **TROUTMAN PEPPER HAMILTON SANDERS LLP**
> Angelo A. Stio, III
> 301 Carnegie Center, Suite 400
> Princeton, New Jersey 08543
> Tel.: (609) 951-4125
> Angelo.stio@troutman.com
>
> *Attorney for Defendant, The Philadelphia Inquirer LLC*

13.3    All notices to the Settlement Administrator provided for in this Agreement shall be sent by email and First-Class mail to the following address:

> Philadelphia Inquirer Data Security Litigation
> P.O. Box 301171
> Los Angeles, CA 90030-171
> info@PhiladelphiaInquirerDataSecurityLitigation.com

13.4    The notice recipients and addresses designated in this Section may be changed by written notice agreed to by the Parties and posted on the Settlement Website.

## 14.    MISCELLANEOUS PROVISIONS

14.1    <u>Representation by Counsel</u>. The Class Representatives and the Philadelphia Inquirer represent and warrant that they have been represented by, and have consulted with, the counsel of their choice regarding the provisions, obligations, rights, risks, and legal effects of this Agreement and have been given the opportunity to review independently this Agreement with such legal counsel and agree to the particular language of the provisions herein.

14.2    <u>Best Efforts</u>. The Parties agree that they will make all reasonable efforts needed to reach the Effective Date and fulfill their obligations under this Agreement.

14.3    <u>Contractual Agreement</u>. The Parties understand and agree that all terms of this Agreement, including the Exhibits thereto, are contractual and are not a mere recital, and each signatory warrants that he, she, or it is competent and possesses the full and complete authority to execute and covenant to this Agreement on behalf of the Party that they or it represents.

14.4    <u>Integration</u>. This Agreement constitutes the entire agreement among the Parties and no representations, warranties or inducements have been made to any Party concerning this Agreement other than the representations, warranties and covenants contained and memorialized herein.

14.5    Drafting. The Parties agree that no single Party shall be deemed to have drafted this Agreement, or any portion thereof. This Agreement is a collaborative effort of the Parties and their attorneys that was negotiated on an arm's-length basis between parties of equal bargaining power. Accordingly, this Agreement shall be neutral, and no ambiguity shall be construed in favor of or against any of the Parties. The Parties expressly waive any otherwise applicable presumption(s) that uncertainties in a contract are interpreted against the party who caused the uncertainty to exist.

14.6    Modification or Amendment. This Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by the persons who executed this Agreement or their successors-in-interest.

14.7    Waiver. The failure of a Party hereto to insist upon strict performance of any provision of this Agreement shall not be deemed a waiver of such Party's rights or remedies or a waiver by such Party of any default by another Party in the performance or compliance of any of the terms of this Agreement. In addition, the waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

14.8    Severability. Should any part, term, or provision of this Agreement be declared or determined by any court or tribunal to be illegal or invalid, the Parties agree that the Court may modify such provision to the extent necessary to make it valid, legal, and enforceable. In any event, such provision shall be separable and shall not limit or affect the validity, legality or enforceability of any other provision hereunder.

14.9    Successors. This Agreement shall be binding upon and inure to the benefit of the heirs, successors and assigns of the Parties thereto.

14.10    Survival. The Parties agree that the terms set forth in this Agreement shall survive the signing of this Agreement.

14.11    Governing Law. All terms and conditions of this Agreement shall be governed by and interpreted according to the laws of the Commonwealth of Pennsylvania, without reference to its conflict of law provisions, except to the extent the federal law of the United States requires that federal law governs.

14.12    Interpretation.

(a)    Definitions apply to the singular and plural forms of each term defined.

(b)    Definitions apply to the masculine, feminine, and neuter genders of each term defined.

(c)    Whenever the words "include," "includes" or "including" are used in this Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

14.13  <u>No Precedential Value</u>. The Parties agree and acknowledge that this Agreement carries no precedential value.

14.14  <u>Fair and Reasonable</u>. The Parties and their counsel believe this Agreement is a fair and reasonable compromise of the disputed claims, in the best interest of the Parties, and have arrived at this Agreement as a result of arm's-length negotiations with the assistance of an experienced mediator.

14.15  <u>Retention of Jurisdiction</u>. The administration and consummation of the Settlement as embodied in this Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction over the Settlement and the Parties for the purpose of enforcing the terms of this Agreement.

14.16  <u>Headings</u>. Any headings contained herein are for informational purposes only and do not constitute a substantive part of this Agreement. In the event of a dispute concerning the terms and conditions of this Agreement, the headings shall be disregarded.

14.17  <u>Exhibits</u>. The exhibits to this Agreement and any exhibits thereto are an integral and material part of the Settlement. The exhibits to this Agreement are expressly incorporated by reference and made part of the terms and conditions set forth herein.

14.18  <u>Counterparts and Signatures</u>. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement shall exchange among themselves original signed counterparts. Digital signatures shall have the same force and effect as the original.

14.19  <u>Facsimile and Electronic Mail</u>. Transmission of a signed Agreement by facsimile or electronic mail shall constitute receipt of an original signed Agreement by mail.

14.20  <u>No Assignment</u>. Each Party represents and warrants that such Party has not assigned or otherwise transferred (via subrogation or otherwise) any right, title or interest in or to any of the Released Claims.

14.21  <u>Deadlines</u>. If any of the dates or deadlines specified herein falls on a weekend or legal holiday, the applicable date or deadline shall fall on the next Business Day. All reference to "days" in this Agreement shall refer to calendar days, unless otherwise specified. The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

14.22  <u>Dollar Amounts</u>. All dollar amounts are in United States dollars, unless otherwise expressly stated.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by their duly authorized counsel:

**SHUB & JOHNS LLC**

Dated: October 4 , 2024

Benjamin F. Johns
*On behalf of Plaintiffs*

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLC**

Dated: October 4 , 2024

Gary M. Klinger
*On behalf of Plaintiffs*

**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**

Dated: October 4 , 2024

Kenneth J. Grunfeld
*On behalf of Plaintiffs*

**MARKOVITS, STOCK & DE MARCO, LLC**

/s/ Terence R. Coates

Dated: October 4 , 2024

Terence R. Coates
*On behalf of Plaintiffs*

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

Dated: October 4 , 2024

Angelo A. Stio III
*On behalf of Defendant, The Philadelphia Inquirer, LLC*

29